Edward M. JONES, Plaintiff,

v.

Richard P. DORIA, Sheriff of DuPage County and John C. Smith, Deputy Chief of the DuPage County Sheriff's Department, Defendants.

No. 90 C 6926.

United States District Court, N.D. Illinois, E.D.

June 10, 1991.

James E. Ryan, DuPage County State's Atty., Thomas F. Downing, Asst. State's Atty., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Edward Jones ("Jones") has sued Du-Page County Sheriff Richard Doria ("Doria") and Deputy Chief of DuPage County Sheriff's Department John Smith ("Smith") in both their individual and official capacities under 42 U.S.C. § 1983 ("Section 1983"). Jones' Complaint seeks damages, injunctive relief and reinstatement based on defendants' alleged violations of his Fourteenth Amendment right to due process in connection with the suspension and then the later termination of Jones' employment without a predeprivation hearing at either time.

Both Doria and Smith have moved for dismissal under Fed.R.Civ.P. 12(b)(1) and 12(b)(6),[1] asserting that the Complaint:

1. fails to state a claim upon which relief can be granted and

2. is barred under the doctrine of res judicata.[2]

Richard J. Reimer, Puchalski, Keenan & Reimer, Chicago, Ill., for plaintiff.

**1.** Familiar Rule 12(b)(6) principles require this Court to accept as true all of Jones' well-pleaded factual allegations, drawing all reasonable inferences in his favor (*Marmon Group, Inc. v. Rexnord, Inc.,* 822 F.2d 31, 34 (7th Cir.1987) (per curiam)). For that purpose all paragraphs in the Complaint will be cited simply "¶ —." As for the legal standard employed here, *R.J.R. Services, Inc. v. Aetna Casualty and Surety Co.,* 895 F.2d 279, 281 (7th Cir.1989) (citations omitted) explains:

Dismissal is proper if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested.

In this instance each of the litigants has, without objection by the other, supplemented his or their legal memoranda with these factual materials in addition to the Complaint:

1. on defendants' side, the findings and order of dismissal by the DuPage County Sheriff's Merit Commission (proceedings expressly covered by the allegations in Complaint ¶¶ 16–18) and the state court Complaint for Administrative Review of that dismissal filed by Jones (represented by the same lawyers who represent him here); and

2. on Jones' side, some correspondence in connection with the Complaint's allegations, a copy of Doria's memorandum of law in the proceedings leading to the dismissal of the Merit Commission proceedings and a copy of the administrative rules of the Sheriff's Department referred to in Complaint ¶ 20.

Of course, some portions of those supplemental materials might not be available to Jones to save his Complaint on the current motion (see *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)). But in light of the decision reached here that Jones' action (and not merely the current Complaint) should be dismissed because the shortcomings in his cause of action are noncurable substantive defects rather than merely pleading flaws that might be corrected by repleading, this Court has taken note of the submissions just as it did in *Car Carriers* for the same limited purpose (see its opinion in that case, 561 F.Supp. 885, 886 n. 2 (N.D.Ill.1983), aff'd by the just-cited Court of Appeals opinion).

**2.** As the later text discussion reflects, what defendants properly advance is only the issue-preclusion facet of the doctrines frequently lumped together under the rubric of "res judicata" (*Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984)). By using the

For the reasons stated in this memorandum opinion and order, defendants' motion is granted and this action is dismissed.

### Facts

Jones was hired by the DuPage County Sheriff's Department as a Deputy Sheriff Corrections Officer in September 1983 (¶ 7). After successfully completing his one-year probationary period Jones became a permanent employee, and he remained on active duty until July 22, 1989, when Doria and Smith suspended him without pay for misconduct that had allegedly occurred a day earlier (¶¶ 8–9).

Jones had an opportunity to appeal his suspension under General Order DEP 4–26, entitled "Departmental Discipline" (the "Department Policy," P.Mem.Ex. 5), and he does not contend that he was denied that right. Instead of pursuing his right to appeal, on December 1, 1989 Jones spoke with Smith to inquire about his returning to work, and Smith advised him that the Sheriff would fire Jones should he not resign from the Sheriff's Department (¶ 11).

> Jones alleges (¶ 12) that:
>
> as a result of coercion and under influence employed by the Defendants, plaintiff involuntarily, conditionally resigned from the Sheriff's Department on December 22, 1989....

That resignation was made effective January 1, 1990. Doria had not yet accepted Jones' resignation when on June 5, 1990, through his attorney, Jones formally withdrew his resignation and declared himself available for work (¶ 14 and P.Mem.Ex. 2). Two days later Doria once again suspended Jones without pay pending the outcome of

charges filed with the DuPage County Merit Commission ("Commission") on that same date (¶¶ 15–16).

Jones appeared before Commission and denied the allegations contained in Doria's complaint against him (¶ 17). On October 22, 1990, without conducting any evidentiary hearing, Commission dismissed Doria's complaint against Jones for lack of jurisdiction because Commission held that Jones had resigned (¶ 18 and Ex. A to D.Mem.Ex. 1) and was thus not currently a member of the Sheriff's Department. Jones has since filed a state court action seeking administrative review of Commission's decision (D.Mem.Ex. 1). This action followed.

### Issue Preclusion

■ Jones claims a twofold deprivation of his property rights:

1. his suspension, which lasted from July 22, 1989 until his resignation (which, as already stated, he made effective on January 1, 1990); and

2. the effective termination of his employment, which Jones claims was both conditional and involuntary—and hence a constructive discharge (¶ 12).

Although no state agency or court has addressed Jones' temporary loss of his job during the period of *suspension*, Commission did determine the effectiveness of Jones' *termination* when it dismissed Doria's complaint against Jones for lack of jurisdiction because it held that *due to his resignation* (Ex. A to D.Mem.Ex. 1, and see ¶ 18 [3]):

> that the issue whether Jones was or was not still an employee—whether his termination was or was not effective—was expressly tendered to Commission for decision and was expressly resolved by it. Commission's order of dismissal for lack of jurisdiction was grounded on this specific finding based on the parties "having fully briefed the issue of the questioned resignation":
>
> > That Deputy EDWARD M. JONES unconditionally resigned from the DuPage County Sheriff's Office with the tender of a letter of resignation, a copy of which is attached hereto and marked as Exhibit A.

broader and less precise generic term, defendants have blurred the fact that their argument incorrectly invokes concepts of claim preclusion—at least in part. This opinion however follows the more precise usage to which the Supreme Court has given its seal of approval in *Migra* and in *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 376 n. 1, 105 S.Ct. 1327, 1330 n. 1, 84 L.Ed.2d 274 (1985). Defendants' attack on part of Jones' claim succeeds on issue preclusion and not on claim preclusion grounds.

**3.** It is true that Complaint ¶ 18 speaks of Jones' "alleged" resignation. But what controls here is

Jones is not a member of the DuPage County Sheriff's Police Department.

Commission's decision that Jones' termination—the result of his resignation—was legally effective cannot be reexamined by this Court. *University of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (footnote omitted) explains that a decision by a state agency acting in a judicial capacity must be given the "same preclusive effect to which it would be entitled in the State's courts." And *Buckhalter v. Pepsi-Cola General Bottlers, Inc.*, 820 F.2d 892, 895 (7th Cir. 1987) teaches:

> From our reading of the Supreme Court's decision in *Elliott* and our own research we have not discovered any legislative history establishing that Congress intended that the civil rights statutes were to foreclose application of the common-law doctrine of preclusion in discharge cases ..., and therefore [a plaintiff] is precluded from relitigating his section 1983 claim in federal courts if: (1) the State agency has acted in a judicial capacity; (2) has resolved disputed issues of fact properly before it; and (3) the parties have had an adequate opportunity to litigate the issues.

First of all, Commission clearly acted in a judicial capacity when it dismissed the Sheriff's complaint against Jones. It is the agency authorized by law to review a sheriff's decision to suspend or fire a deputy sheriff. *Wagner v. Kramer*, 108 Ill.2d 413, 420, 92 Ill.Dec. 218, 221, 484 N.E.2d 1073, 1076 (1985) confirms that principle:

> From an examination of the statutes set out above and based on *Kropel* [*v. Conlisk*, 60 Ill.2d 17, 322 N.E.2d 793 (1975)] and its reasoning, the Sheriff's Merit System Act must be construed, under the public policy of this State, to provide some method of review of disciplinary suspensions imposed by the sheriff. We consider that the sheriff's merit commission is the proper body to review disciplinary suspensions under its established procedures set out in section 14 (Ill.Rev. Stat.1983, ch. 125, par. 164), which section also provides an avenue of judicial

review of orders of the commission to the circuit court under the Administrative Review Law (Ill.Rev.Stat.1983, ch. 110, par. 3–101 *et seq.*).

Second, Commission necessarily decided the issue of the legal effectiveness of Jones' resignation when it ruled on Board's motion to dismiss the case. Commission states immediately before the finding quoted in n. 3 (Ex. A to D.Mem.Ex. 1):

> The parties hav[e] been fully advised in the premises and hav[e] fully briefed the issue of the questioned resignation of Edward M. Jones from the DuPage County Sheriff's Department....

Commission's determination of the effectiveness of Jones' resignation necessarily subsumes a negative answer to such subsidiary questions as whether it was, as he now asserts, involuntary (and hence ineffective) or conditional (and hence inoperative).

Finally, there can be no quarrel with the parties' adequate opportunity to litigate those issues. They both had and exercised that opportunity before Commission. And Jones lost.

Thus Jones has no right to bring those issues before this Court anew. Accordingly the entire portion of the Complaint relating to Jones' termination must be and is dismissed.

### Due Process Claims

As to the period of his suspension, Jones contends that both substantive and due process rights are implicated in the deprivation of his property interest in his employment (¶ 26). *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) explains that to establish such a Section 1983 violation, a plaintiff must prove that:

> the conduct complained of was committed by a person acting under the color of state law; and ... this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Jones has pleaded that defendants—both of them being state actors by occupation and both acting in their official capacities—

acted "under color of State law" (¶ 4), and that characterization is of course not contested by defendants. To satisfy the other component of a Section 1983 claim, Jones must also show that he had a property interest in his employment. As *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990) (citations omitted) states:

> Before a party may assert a due process argument—procedural or substantive—it must be established that it has a "legitimate claim of entitlement" to the right being asserted.

■ On that score, Jones has properly shown that his interest in his job is a property right protected by the Due Process Clause—one created by Ill.Rev.Stat. ch. 125, ¶ 113:[4]

> Except as is otherwise provided in this Act, no deputy sheriff in the county police department shall be removed, demoted or suspended except for cause, upon written charges filed with the Board by the Sheriff and a hearing before the Board thereon, upon not less than 10 days' notice at a place to be designated by the chairman thereof. At such hearing, the accused deputy sheriff shall be afforded full opportunity to be heard in his own defense and to produce proof in his defense.

4. Further references to Chapter 125's provisions will take the form "Section —", following the designation employed by the Illinois General Assembly rather than the "¶" usage appearing in the Smith–Hurd annotations. No confusion should be engendered by this opinion's use of "Section 1983" as well as using the "Section" label for the Chapter 125 citations, given the very different section numbers that are involved. One of the Illinois statutory provisions that is *not* implicated in this case is Section 112, which allows the Sheriff to take disciplinary measures to punish infractions of rules and regulations:

> Such disciplinary measures may include suspension of any deputy sheriff in the county police department for a reasonable period, not exceeding 30 days, without complying with the provisions of Section 13 hereof [Section 113].

That authority of a sheriff to impose a short-term suspension without a hearing has not been challenged by Jones, nor is it at issue here in any event because he was in fact suspended for a period of more than 30 days.

Once the State thus granted Jones the right to employment unless there was "cause" to suspend or fire him, that right became a property interest protected by the Due Process Clause. If the State were then to deprive a person of such a protected property interest, two types of due process claims—substantive and procedural—might perhaps arise. As already stated, here Jones claims both types, and they will be dealt with in turn.[5]

Substantive Due Process

■ There is no question that Jones may plead a substantive due process claim for a deprivation of a state-created property interest (*Polenz v. Parrott*, 883 F.2d 551, 558 (7th Cir.1989)). But *New Burnham Prairie Homes*, 910 F.2d at 1481 (citations omitted) teaches that for a plaintiff to assert such a claim:

> in addition to alleging that the decision was arbitrary and irrational, "the plaintiff must also show either a separate constitutional violation or the inadequacy of state law remedies."

Jones does not allege that the defendants' actions were "arbitrary or irrational."[6] Moreover, even were that to be cured he would still lose, for he fails entirely to address the adequacy of the state law remedies that were available to him.[7]

5. There is no doubt that a temporary suspension "implicate[s] the procedural protections of the due process clause" as much as a discharge (*Finkelstein v. Bergna*, 924 F.2d 1449, 1451 (9th Cir.1989); see *FDIC v. Mallen*, 486 U.S. 230, 243, 108 S.Ct. 1780, 1789, 100 L.Ed.2d 265 (1988)).

6. Jones asserts only that the decisions were (¶ 25):

> willful, wanton, and malicious, and were done or performed with full knowledge and/or reckless disregard of plaintiff's rights.

Even with the required favorable reasonable inferences (see n. 1), those allegations bearing on defendants' intention or state of mind cannot be stretched to charges of arbitrariness or irrationality (which go to the substantive validity of the actions taken).

7. Jones argues only that he cannot pursue some of those remedies at this time (P.Mem. 14). But his failure to take advantage of the procedures available to him does not reflect on the adequacy of the procedures themselves. Jones also incorrectly suggests that he could not have ap-

Both Illinois law and departmental regulations provide remedies to protect Jones' due process rights. *Wagner*, 108 Ill.2d at 420, 92 Ill.Dec. at 221, 484 N.E.2d at 1076 expressly held that a suspended deputy sheriff has the right to appeal a disciplinary suspension to Commission and, beyond that, the right to appeal an unfavorable Commission order to the circuit court under the Administrative Review Law, Ill. Rev.Stat. ch. 110, ¶ 3–101. Jones also acknowledges (P.Mem. 13) that "the Sheriff's own rules and regulations required" an internal pre-suspension hearing.[8] Finally, wholly apart from those procedures, Jones had the right to seek a remedy in state court (see, e.g., the strikingly similar decision in *Fruhling v. County of Champaign*, 95 Ill.App.3d 409, 416, 51 Ill.Dec. 508, 512, 420 N.E.2d 1066, 1070 (4th Dist.1981)).

■ As fatal as those adequate state law remedies are to Jones' substantive due process claim (and they are), he also strikes out on still another independent ground: On the facts presented in the Complaint, Jones' claim could not possibly fall within the ambit of a substantive violation. *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (citations omitted) has stated succinctly:

> [T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." As to [this kind of claim], the constitutional violation actionable under § 1983 is complete when the wrongful action is taken.

As *Zinermon* suggests, there is a distinction between a claim that challenges the process used to deprive a person of a property interest and a claim that addresses the taking itself. On this same subject *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1173 (7th Cir.1991) recently reconfirmed

that "substantive due process"—in the ordinary legal use of the term—does not relate to the claimed inadequacy of the procedure employed:

> This doctrine with an odd appellation ("substantive process?" *).... 

---

> * "There is simply no avoiding the fact that the word that follows 'due' is 'process.' ... Familiarity breeds inattention, and we apparently need periodic reminding that 'substantive due process' is a contradiction in terms—sort of like 'green pastel redness.'" John Hart Ely, Democracy and Distrust 18 (1980).

Unlike the plaintiffs in *Saukstelis*, who received abundant process before their cars were immobilized by the Denver Boot, Jones received none before his suspension. And here nothing in the Complaint suggests that Doria lacked the authority to suspend Jones, if Doria had followed proper procedures. Instead Complaint ¶ 24 makes it abundantly plain that it is defendants' failure to give Jones a hearing that forms the gravamen of his claim:

> Prior to plaintiff's suspension and subsequent termination, the defendants, while acting under color of law, failed to provide plaintiff with due process of law in that:
>
> (a) Plaintiff was never provided with timely notice of any charges against him underlying the administrative action or the charges or complaints against him;
>
> (b) Plaintiff was never provided the opportunity to defend against any adverse witnesses, unsubstantiated allegations or uncorroborated investigative findings;
>
> (c) Plaintiff was never provided the opportunity to present witnesses, evidence, or arguments to rebut unsubstantiated allegations;
>
> (d) Plaintiff was never provided the opportunity to present witnesses, evi-

---

pealed defendants' decision prior to the hearing that never was offered (P.Mem. 13). It appears from the Department Policy and from *Wagner* that he could indeed have done so.

**8.** D.R.Mem. 4 cites Department Policy § XIV, which states that an employee has the right to appeal minor suspensions. That might perhaps be questioned as an inadequate remedy here,

where the suspension was imposed by the Sheriff himself and where the highest appeal authority in the cited section of the Department Policy is a Sheriff's Inquiry Board. But that need give no pause, for in all events there are plainly adequate avenues of review for the type of random suspension complained of here through either the state courts or Commission.

dence, or arguments to an impartial tribunal for a determination thereof.

Those allegations clearly address a failure by defendants to comply with certain procedures before suspending Jones. That failure can be characterized only as a violation of Jones' procedural—not substantive—due process rights. In short, except for his curt (and thus meaningless) assertion that a substantive due process violation occurred, Jones has not pleaded a claim under that theory.

Procedural Due Process

■ As Complaint ¶ 6 describes, defendants took away Jones' property interest in his employment without affording him a hearing or notice:

> The actions complained of herein, were undertaken by the defendants, Sheriff Doria and Deputy Chief Smith in their official capacities as final decision makers pursuant to authority granted to them by the County of DuPage and such actions represented official DuPage County customs, policy and practice.

That allegation implies that defendants' denial of a hearing and notice to Jones was part of a policy—either formal or informal—to suspend employees without a hearing or notice. But if that were so, any such policy was created and enforced by defendants without any authority and in direct violation of state law. Indeed, Complaint ¶ 24(e) expressly alleges:

> Defendant acted outside the scope of his authority and in direct violation of Chapter 125, ¶ 112, Ill.Rev.Stats. (1989) and his own rules and regulations in that he suspended the plaintiff without pay in excess of the thirty day limitation period provided for by this statutory provision and his internal rules and regulations.

That characterization of defendants' lack of authority to suspend an employee for over 30 days without a hearing fully comports with the reading given by Illinois courts. *Fruhling*, 95 Ill.App.3d at 416, 51 Ill.Dec. at 512, 420 N.E.2d at 1070 (citations omitted) examined a similar case in which a sheriff suspended a deputy sheriff for more than 30 days without filing charges or providing a predeprivation hearing and held:

> It is unquestioned that the sheriff followed none of the above regulations when he unilaterally suspended and subsequently terminated plaintiff's employment. The sheriff's failure to comply with procedural rules of the Merit Commission is a jurisdictional question which renders his actions void.

At the outset it should be noted, of course, that a mere showing of defendants' violations of *state* law and of their *own* procedures in denying Jones a hearing and notice would not of themselves equate to a violation of Jones' federal due process rights. Neither Doria's nor Smith's failure to follow the state-established procedures is actionable under federal law as such. *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 567 (7th Cir.1991) makes the point well:

> In *Archie v. City of Racine*, 847 F.2d 1211, 1218 (7th Cir.1988), cert. denied, 489 U.S. 1065 [109 S.Ct. 1338, 103 L.Ed.2d 809] (1989) . . . we determined that states may enforce, alter, or disregard state law so far as the Due Process Clause is concerned. It is not the role of federal courts to inform states how to enforce their own laws.

Thus whether defendants violated state law is not the issue here. Instead it is federal constitutional standards that mandate the procedure required under the Due Process Clause. Once the State has created Jones' property interest in employment, it cannot deny his right to those constitutionally mandated procedural safeguards.

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (citation omitted) explains:

> The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. . . . The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the

legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."

What process is due to a public employee before he or she is suspended or fired is well-established. *Loudermill, id.* at 546, 105 S.Ct. at 1495 (citations omitted) summarizes the required procedures:

The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

Except in unusual circumstances,[9] as *Loudermill, id.* at 542, 105 S.Ct. at 1493 (citations and footnote omitted, emphasis in original) puts it:

We have described "the root requirement" of the Due Process Clause as being "that an individual be given the opportunity for a hearing *before* he is deprived of any significant property interest." This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. As we pointed out last Term, this rule has been settled for some time now. Even decisions finding no constitutional violation in termination procedures have relied on the existence of some pretermination opportunity to respond.

Both parties agree that Jones was not afforded a predeprivation hearing or notice of any charges against him. But just because defendants failed to provide Jones with pre-deprivation notice and a hearing does not necessarily mean that he has a due process claim against them. *Hudson v. Palmer*, 468 U.S. 517, 534, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984) teaches:

The controlling inquiry is solely whether the state is in a position to provide for pre-deprivation process.

And as *Zinermon*, 110 S.Ct. at 983 holds:

Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

To return then to that point of beginning, Section 113 requires that the Sheriff provide a hearing and notice in order to suspend a deputy sheriff, and the Department Policy provides the same protection. And state law unquestionably afforded Jones the right to contest any failure of the defendants to give him the procedure that he was thus due. Finally, to complete the procedural matrix in which Jones' due process claim must be examined, his complaint challenges neither the procedure nor the remedies that were required under both state law and Departmental Policy.

In that context the only questions to be resolved are whether defendants' decisions or the state's failure to safeguard against those decisions are actionable under Section 1983. Whether Jones has any claim depends on the nature of defendants' actions. If they were acting in a "predictable" manner so that the State could have provided some other procedural safeguards, Jones might have a claim under Section 1983 (*Zinermon*, 110 S.Ct. at 989). *Easter House v. Felder*, 910 F.2d 1387, 1402 (7th Cir.1990) (en banc) has construed *Zinermon* in that respect:

In its most fundamental form, we believe *Zinermon* holds only that predictable deprivations of liberty or property which flow from authorized conduct are compensable under § 1983.

---

**9.** There might be occasions where a hearing might be postponed until after the deprivation. *Mallen*, 486 U.S. at 240, 108 S.Ct. at 1787 (citations omitted) states:

An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation.

But Jones has yet to receive a hearing, and thus his situation cannot fall within that exception.

On the other hand, if defendants were acting in an unpredictable manner that was "random and unauthorized," Jones has no claim unless there was no adequate remedy under state law—a principle epitomized by *New Burnham Prairie Homes*, 910 F.2d at 1480 and, even more recently, by *Soldal v. County of Cook*, 923 F.2d 1241, 1248 (7th Cir.1991) (citing *Zinermon*):

> The denial of procedural rights as a result of the random and unauthorized acts of subordinate public officers—a good description of the deputy sheriffs in this case—is not actionable in a suit under § 1983 unless the plaintiff lacks adequate remedies under state law.[10]

■ In this instance, Jones' Complaint plainly asserts that defendants' actions were unauthorized. At no point does Jones directly challenge the adequacy or validity of either Section 112 or Section 113.[11] Nor does he claim that the policy of Illinois, as embodied in Sections 112 or 113 and the written Sheriff's policies, gave defendants any authority to suspend Jones for over 30 days without a hearing or notice. Rather Jones alleges that Doria's actions violated the provisions of Section 112 and General Order DEP 4–26 that limited the authority of the Sheriff to suspend a deputy sheriff without a hearing for a period of no more than 30 days (¶¶ 19–20). It is also not possible for Jones to characterize defendants' conduct as having created a new policy that was in direct contravention of the established one.[12]

Here defendants' actions, which were contrary to those mandated by departmental rules and state law, were random and unauthorized. In the language of *Easter House*, 910 F.2d at 1401, 1404 (citation omitted, emphasis in original):

[Plaintiff] points to nothing which would indicate that the state knew or should have known that the [defendants] or other state employees had disregarded, or were likely to disregard the state's established procedure....

\*     \*     \*     \*     \*     \*

Section 1983 must be preserved to remedy only those deprivations which actually occur without due process of law, such as those which result from a *state's* conscious decision to ignore the protections guaranteed by the Constitution. It should not be employed to remedy deprivations which occur at the hands of a state employee who is acting in direct contravention of the state's established policies and procedures which have been designed to guarantee the very protections which the *employee* now has chosen to ignore.

Of course it is always possible that a sheriff may disregard state and federal law, as defendants did here. But in the face of such a possibility, the state need only provide adequate post-deprivation remedies. *Zinermon*, 110 S.Ct. at 989 (citation omitted) holds that under those circumstances:

> [T]he errant employee himself could anticipate the deprivation since he intended to effect it, but the State still was not in a position to provide predeprivation process, since it could not anticipate or control such random and unauthorized intentional conduct. Again, a rule forbidding a [public official] from maliciously [disregarding a person's constitutional rights] would not have done any good; it would be absurd to suggest that the

10. [Footnote by this Court] *Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916 is the source of that rule. *Hudson*, 468 U.S. at 533, 104 S.Ct. at 3203 then extended the *Parratt* analysis to random and unauthorized "intentional" conduct, which is also not actionable under Section 1983.

11. *D'Acquisto v. Washington*, 640 F.Supp. 594, 619 n. 12 (N.D.Ill.1986) questioned whether Ill. Rev.Stat. ch. 24, ¶ 10–1–18.1 (a statute similar to the ones relevant here) "allowing suspensions for up to 30 days without a hearing may be unconstitutional" under *Loudermill*. But that

would bear only on the validity of Section 112 and not on Section 113, so that it could not affect the decision reached here. Because Section 113 mandates a hearing while Section 112 does not, Jones' state law challenge to his extended suspension could be mounted whether or not he attacked Section 112 as invalid even as to a shorter suspension.

12. No single deviation from state policy by a public official constitutes a new policy (*Easter House*, 910 F.2d at 1403).

State hold a hearing to determine whether [the public official] should engage in such conduct.

There is thus no question that the State had provided Jones not only with the proper pre-deprivation procedure but also with a remedy if such process was not afforded due to the unforeseen negligence or even the maliciousness of defendants. Accordingly, Jones has failed to state a claim under procedural due process grounds as well.

### Conclusion

Jones' Complaint rests on the theory that even though the State provided adequate due process and post-deprivation remedies, defendants' unpredictable, random and unauthorized departure from those procedures is somehow actionable under Section 1983. As already quoted in n. 1, *R.J.R. Services*, 895 F.2d at 281 (citations omitted) teaches that dismissal must follow the failure of a plaintiff to make the necessary facial showing in his initial pleading. Under that standard, the Complaint simply presents no valid Section 1983 claim and is therefore dismissed. Nor does Jones suggest any predicate for curing the flaws that have been identified here. Accordingly this action is dismissed as well.